IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOWER INS. CO. OF NEW YORK,<br><br>        Plaintiff,<br><br>  v.<br><br>CAPURRO ENTERPRISES INC., et al.,<br><br>        Defendant.                    /<br><br>AND RELATED COUNTERCLAIMS.<br>                                    / | No. C 11-03806 SI<br><br>**ORDER DENYING TOWER'S MOTIONS FOR SUMMARY JUDGMENT AND FOR MOTION FOR PARTIAL SUMMARY JUDGMENT; AND GRANTING TOWER'S MOTION TO DISMISS TOWER GROUP, INC.** |

Before the Court are the motions by plaintiff and counter-defendant Tower Insurance Company of New York and counter-defendant Tower Group, Inc. (collectively, "Tower") (1) for summary judgment on Tower's complaint for declaratory judgment and Capurro's counterclaim for breach of contract; or (2) in the alternative, Tower's motion for partial summary judgment on defendant Capurro Enterprises, Inc. and Nicholas L. Capurro Jr.'s (collectively, "Capurro") second counter-claim for breach of the implied covenant of good faith and fair dealing; and (3) Tower's motion to dismiss Capurro's counterclaims pursuant to Fed. R. Civ. P. 12(b)(6). The motions are scheduled for hearing on December 16, 2011. Pursuant to Local Rule 7-1(b), the Court determines these matters appropriate for resolution without oral argument, and VACATES the hearing. For the reasons set forth below, the Court DENIES plaintiff's motions.

## BACKGROUND

This is an action seeking a declaration that plaintiff had no duty to defend or indemnify

defendant on a commercial general liability insurance policy that covered, among other things, "personal and advertising injury." Tower has brought a complaint for declaratory relief that it owed no duty to defend Capurro after a complaint was filed against Capurro by a third-party, Certa ProPainters ("Certa Pro"). Along with his answer to the complaint, Capurro filed counterclaims against Tower for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.

## I.     The underlying claim

The following facts are taken from the complaint in underlying suit.[1] Certa Pro is a national franchisor of painting franchises, which offer painting, decorating and related services to customers. Compl., Ex. 1 (Complaint, *Certa ProPainters Ltd. v. Capurro*, 10-CV1542 WHA) ("Underlying Complaint"). Capurro is a citizen of California and the president of Capurro Enterprises. In 2006, Certa Pro and Capurro entered into a franchise agreement, pursuant to which Capurro obtained the right to operate a Certa Pro franchised business for ten years. The agreement authorized Capurro to market and sell residential painting services under Certa Pro's "Proprietary Marks." The Proprietary Marks, according to Certa Pro, include, but are not limited to, "Certa ProPainters," "CertaPro," "The Color of Certainty," "Painting. Passion. Professionalism." and "Certainty Service System," all of which are registered with the United States Patent and Trademark Office. *Id.*, ¶ 10. In exchange for the use of Certa Pro's Proprietary Marks (as well as training, marketing, and other franchisee benefits), Capurro would pay Certa Pro a minimum royalty of $22,500 per year, as well as a percentage of Capurro's gross sales.

On December 30, 2009, Capurro notified Certa Pro that he wished to terminate the Franchise Agreement. According to documents attached to the underlying complaint, Capurro parted ways with Certa Pro due to "low revenue numbers which affected [his] ability to pay minimum royalties." Underlying Compl., Ex. E (Def's Jan. 1, 2010 Response to Notice of Default and Letter to System Franchisees). Capurro thereafter began marketing a new business named Majestic Painters. According to Certa Pro, Capurro "established a website marketing [Majestic Painters], expressly referring to it as

---

[1] The Court GRANTS plaintiffs' unopposed request for judicial notice of the underlying complaint and attached exhibits.

2

a 'former Certa Pro franchisee,' . . . advertising Certa Pro's Telephone Number used in connection with the Franchised Business, and stating that the Competing Business evolved from Capurro's 'first Painting Business, Certa ProPainters of Livermore." Underlying Compl., ¶ 40. The website also referred to Capurro's colorist "as a Certa Pro 'certified and trained colorist'" *Id.,* ¶ 41. An advertisement for Majestic Painting on another website listed Capurro's email address as "ncapurro@certapro.com." *Id.,* ¶ 43. Finally, on the greeting to his business telephone number, Capurro stated "you have reached Majestic Painters formerly known as Certa ProPainters . . ." *Id.,* ¶ 44.

In the Underlying Complaint, Certa Pro alleged that by "holding themselves out as a former Certa Pro franchisee who received Certa Pro training," Capurro was "trading on the Proprietary marks and confidential and proprietary information they obtained from Certa Pro."[2]  Moreover, "the Defendants also continue to use the Proprietary Marks, Telephone Number, and Capurro's Certa Pro email . . . in commerce with their Competing Business, thereby wrongfully benefitting from Certa Pro's registered trademarks, trade dress, trade names and Certa Pro's Proprietary marks without license or authority from CertaPro." *Id.*, ¶ 53.

Based on these allegations, Certa Pro filed the Underlying Complaint against Capurro on April 9, 2010, alleging (1) trademark infringement under 15 U.S.C. § 1114, (2) false designation of origin under 15 U.S.C. § 1125(a), (3) common law trademark infringement, (4) unfair competition under Cal. Bus. & Prof. Code § 11700, (5) violation of Cal. Bus. & Prof. Code § 175000, (6) breach of covenant not to compete, (7) breach of contract, (8) unjust enrichment, (9) accounting, and (10) declaratory relief. The complaint sought injunctive relief to prevent Capurro from "performing any acts or omissions or using any service marks, trademarks, trade names, trade dress, words, names, styles, titles designs or marks that are likely to cause confusion or mistake, or to deceive . . ." *Id.* at 17. Certa Pro also sought disgorgement, restitution of profits, and damages.

According to Capurro, the underlying claim has since settled.

---

[2] Capurro does not admit to any allegations in the underlying complaint. Def.'s Response at 10.

## II. The insurance policy

Tower issued to Capurro Enterprises, Inc., a general commercial liability policy effective June 18, 2009 to June 19, 2010. The policy's "Coverage B - Personal and Advertising Injury Liability" section states that "[Tower] will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury.' We will have the right and duty to defend the insured against any 'suit' seeking those damages.'" Capurro Decl., Ex. 2 at 5 (the "Policy"). The Policy defines "personal and advertising injury," in relevant part, as the "use of another's advertising idea in your 'advertisement,'" as well as "[i]nfringing on another's copyright, trade dress or slogan in your 'advertisement.'" An "advertisement" is defined in the Policy as a "notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

The policy also excludes coverage for a series of potential advertising injuries. Relevant exclusions here are:

> f.  Breach of Contract - 'Personal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement.
>
> . . .
>
> I.  Infringement of Copyright, Patent, Trademark or Trade Secret - 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.
>     However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan.
>
> . . .
>
> l.  Unauthorized Use of Another's Name or Product - 'Personal and advertising injury' arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

Put simply, the policy covers, in relevant part, Capurro's use of another's advertising ideas, copyright, trade dress or slogans in Capurro's advertisements. It does not cover Capurro's infringements of another's trademarks, nor Capurro's use of another's name or product in its e-mail address.

4

### III. Capurro's Claim

Certa Pro filed its suit against Capurro on April 9, 2010. On May 4, 2010, Capurro (through counsel) tendered Certa Pro's complaint to Tower, requesting that Tower provide a defense for Capurro in the underlying action and indemnify Capurro for any damages that may be assessed. Tingley Decl., Ex. A (the "May 4th letter"). Capurro stated a number of reasons that Certa Pro's complaint fell within the coverage of the Policy; for example, according to the May 4 letter, the underlying complaint "includes allegations that the [Certa Pro] has been damaged as a result of the commission advertising injury offenses – i.e., the use of [Certa Pro's] advertising ideas and infringement upon [Certa Pro's] copyright, trade dress or slogan. These offenses are alleged to have included the insureds' use of advertising ideas, copyright, trade dress or slogans in their advertisements and promotions that imitate or simulate [Certa Pro's] advertising ideas, copyright, trade dress or slogan." *Id.,* at 2.

On June 3, 2010, Tower responded to the May 4th letter by disclaiming coverage of the underlying action, declining to participate in the defense or to indemnify. Tingley Decl., Ex. B (the "June 3rd letter"). According to the June 3rd letter, Tower found that:

> [Certa Pro's] complaint alleges no facts to suggest that the defendant infringed any trade dress or slogans whether in an advertisement or at all. Rather, the complaint makes passing references to trade dress, and certain phrases that may qualify as slogans (along with trade name, trademarks, trade practices, and related concepts) in connection with the plaintiff's concerns about the defendant's operating a competing business and failing to pay royalty and advertising fees, and the damage these actions allegedly caused to plaintiff's overall business reputation and practices, including trade dress.

*Id.* at 4. Tower also cites to a number of the exclusions in the policy, arguing that even if the underlying complaint alleged facts suggesting infringement of trade dress or slogan, the Policy excludes coverage for the use of trade dress or slogans not part of the insured's advertisements; nor does it cover trademark claims, whether in an advertisement or not. Finally, Tower notes that while Certa Pro claims the right to a variety of slogans (including "The Color of Certainty," and "Painting. Passion. Professionalism."), the complaint does not allege that Capurro employed any of these phrases in its advertisements for Majestic Painters. In the letter, Tower requests that "[i]f in fact you employed any of these phrases in your competing advertisements, you should forward copies of those advertisements to the undersigned, together with a description of the dates and methods of advertisement, for evaluation." *Id.* at 6.

5

Thereafter, various letters were exchanged over the course of months between Capurro's counsel and Tower, arguing the merits of Tower's disclaimer of coverage. *See* Tingley Decl., Exs. C-F. Capurro threatened a lawsuit and attached a draft complaint seeking a declaration that the underlying action was covered by the Policy. Tower then filed this action seeking a declaration that it owed no duty to defend. Capurro answered that complaint and filed counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

**DISCUSSION**

**I.     Tower's Motion for Summary Judgment**

    **A.     Duty to Defend**

Tower has moved for summary judgment on its complaint and Capurro's counterclaim for breach of contract, seeking a declaration that Tower had no duty to defend Capurro in the Underlying Action brought by Certa Pro.

In California, an insurer's duty to defend its insured is broad. *Pension Trust Fund for Operating Engineers v. Federal Ins. Co.*, 307 F.3d 944, 949 (2002). The California Supreme Court has held that an insured is entitled to a defense "if the underlying complaint alleges the insured's liability for damages *potentially* covered under the policy." *Montrose Chemical Corp. v. Superior Court of Los Angeles County*, 6 Cal. 4th 287, 299 (1993) (emphasis in original) (holding that the insurer may rely on the complaint, the insurance policy, and extrinsic facts known to it at the time of tender). The duty to defend is necessarily broader than the duty to indemnify because of "the difficulty in determining whether the third party suit falls within the indemnification coverage before the suit is resolved." *Pension Trust Fund*, 307 F.3d at 949. "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose*, 6 Cal. 4th at 300. Finally, "[o]nce the insured makes a showing of potential coverage, the insurer may be relieved of its duty only when the facts alleged in the underlying suit can by no conceivable theory raise a single issue that could bring it within the policy coverage." *Pension Trust Fund*, 307 F.3d at 949 (*citing Montrose Chem.,* 6 Cal. 4th at 300).

As noted above, once the Policy's exclusions are factored in, the Policy covers injuries arising from the use of another's advertising ideas, copyrights, trade dress, and slogans in one's advertisements. The question before the Court, therefore, is whether the Underlying Complaint alleged potential injuries that triggered the Policy's coverage for infringement of Certa Pro's advertising ideas, copyrights, trade dress or slogans in Capurro's advertisements.

7

1 Tower's argument that no duty to defend arose from the Underlying Complaint can be
2 summarized as follows. First, the Underlying Complaint alleges that Capurro used Certa Pro's name and
3 contact information (both phone and email) in Capurro's website (Underlying Compl., ¶ 40), on a third
4 party website (¶ 43), and in its phone greeting (¶ 44). MSJ at 10-11. According to Tower, Certa Pro's
5 name and contact information, even if used in an advertisement, do not constitute an advertising idea,
6 trade dress or slogan, and therefore fall outside of the Policy's coverage. *Id.* at 11, *citing American*
7 *Simmental Assn.v. Coregis Ins. Co.,* 282 F.3d 582, 587 (8th Cr. 2002) ("The plain and ordinary meaning
8 of 'advertising idea' generally encompasses 'an idea for calling public attention to a product or business,
9 especially by proclaiming desirable qualities so as to increase sales or patronage'"); *Feist Publ'ns, Inc.*
10 *v. Rural El. Serv. Co.*, 499 U.S. 340 (1991) (With respect to copyrights, "[t]he originality requirement
11 'rules out protecting . . . names, addresses, and telephone numbers of which the plaintiff by no stretch
12 of the imagination can be called the author"); *Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 764
13 n.1 (1992) (trade dress refers to a business's or product's "total image and overall appearance," and may
14 "include features such as size, shape, color or color combinations, texture, graphics, or even particular
15 sales techniques.")

16 Second, Tower addresses the Underlying Complaint's allegation that in addition to holding itself
17 out as a former Certa Pro franchisee, Capurro continued to use Certa Pro's Proprietary Marks "in
18 connection with their Competing Business, thereby wrongfully benefitting from Certa Pro's registered
19 trademarks, trade dress, trade names and Certa Pro's Proprietary Marks without license or authority
20 from Certa Pro." Underlying Compl, ¶ 53. While Tower concedes that the Policy covers infringing
21 another's trade dress, it contends that the infringement must be "in your advertisement." MSJ at 13.
22 According to Tower, "the complaint does not allege that Capurro infringed Certa Pro's trade dress, if
23 any there was, in the two websites that Capurro allegedly used, and the causal-nexus requirement is thus
24 not satisfied with respect to the infringement of trade dress in Capurro's advertisement." *Id.*

25 The Court disagrees with Tower's analysis of the allegations in the Underlying Complaint. The
26 Underlying Complaint repeatedly alleges the wrongful use of Certa Pro's non-inclusive list of
27 Proprietary Marks. Underlying Compl., ¶ 10, 53-56. It also explicitly alleges that Capurro was
28 "wrongfully benefitting from Certa Pro's . . . trade dress." Underlying Compl, ¶ 53; *see also* ¶¶ 54-56,

8

17:5:15. To be sure, given the specific examples provided in the Underlying Complaint, there could be some doubt as to whether the facts established the duty to defend. However, "any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose*, 6 Cal. 4th at 300.

Moreover, the duty to defend arises from extrinsic facts as well. *Montrose*, 6 Cal. 4th at 295. In Capurro's initial tender of its claim, Capurro stated that "it is possible that advertisements continued to be published or broadcast on the internet, to general public [sic], or to market segments to attract customers that contained alleged infringing material. For example, while the 'Certa Propainter' name was intended to be removed from advertising publications and materials, it is possible these publications could be found to have contained Plaintiff's slogans or reflect its alleged trade dress." May 4th Letter, at 1. After Tower rejected Capurro's claim, Capurro's next letter stated that his " vehicle had been outfitted with a Certa ProPainters vinyl vehicle wrap publishing or broadcasting (such as by a billboard) services using the trade dress and slogans in issue. The insured found it very difficult to remove this wrap prior to it all being removed," and, therefore, it remained on his van. Tingley Decl., Ex. C. Despite these factual allegations, Tower refused to defend its insured. Tower did ask for images of the van, which were provided along with Capurro's response to the instant motion. Tower now argues that the images show only the use of Certa Pro's trademarks (its name), not its trade dress, and thus "Capurro's convoluted attempt to show that it was sued for covered infringement of trade dress or slogan rather than for excluded infringement of trademark is thus exposed as false." Pl.'s Reply at 2.

However, the produced images of the advertisements and vehicle wrap do not end the inquiry. Even accepting Tower's characterization of the signs as simply trademark infringement (itself not a sure proposition, as the vehicle wrap may contain elements of Certa Pro's trade dress), one's duty to defend is not analyzed after discovery; it "must be assessed at the outset of litigation against an insured." *Staefa Control-Sys. Inc. v. St. Paul Fire & Marine Ins. Co.*, 847 F. Supp. 1460, 1466 (N.D.Cal. 1994) (Patel, J.) At the *outset* of the underlying litigation, based on the Underlying Complaint and letters from Capurro's counsel, Tower was put on notice of potential injury covered by the Policy. An insurer cannot "wait out" discovery before determining its duty to defend; that is precisely why the California Supreme Court requires defense even on the basis of potential coverage. *Montrose Chem.*, 6 Cal. 4th at 299.

9

Relying on *Hurley Construction Company v. State Farm Fire & Casualty Co.*, 10 Cal. App. 4th 533 (1992), Tower argues that while its duty to defend may be triggered by known extrinsic facts, "the insured may not speculate about unpled third party claims to manufacture coverage." MSJ at 14 (*citing Hurley*, 10 Cal. App. at 538). Tower's reliance on *Hurley* is misplaced. There, the underlying action charged the insured with participation in conspiracy to engage in fraudulent billing practices. The insurance policy at issue limited coverage to third party claims for bodily injury and damage to tangible property. The complaint against the insured would therefore require amendment for the allegations to fall within the ambit of the coverage, a proposition the court found too attenuated to trigger the duty to defend. *Id.* Here, the Policy covered advertising injury; Certa Pro complained of, *inter alia*, advertising injury. *Hurley* does not stand for the proposition that additional *facts* that add to potentially covered allegations already in the complaint cannot be relied upon when tendering a claim to one's insurer. Indeed, in most cases, as here, the insured is far more likely to know potential facts that trigger the defense duty than the injured party drafting the complaint. Courts "do not examine only the pleaded word but the potential liability created by the suit," *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 276 (1966). Here, additional known and potential facts were provided to Tower in Capurro's initial tender, along with the Underlying Complaint containing allegations that created the potential for coverage. This was sufficient to trigger the duty to defend.

The Court therefore DENIES Towers' motion for summary judgment on its complaint for declaratory relief and Capurro's counterclaim for breach of contract.[3]

## II.     Tower's Motion for Partial Summary Judgment

In the alternative, Tower moves for partial summary judgment on Capurro's second counter-claim for "bad faith." MSJ at 1. Capurro claims Tower breached the covenant of good faith and fair dealing, by, *inter alia*:

---

[3]In its motion, Tower also moves to dismiss Capurro's counterclaims pursuant to Fed. R. Civ. P. 12(b)(6); it provides only one sentence in its Notice of Motion that the counterclaims should be dismissed because they "fail to state any claim for relief against Tower Insurance . . . because no duty to defend or indemnify Capurro in connection with the underlying action arose under the Tower Insurance policy." MSJ at 1. For the same reasons it denies Tower's motion for summary judgment on this issue, it DENIES Tower's motion to dismiss Capurro's counterclaims. Tower's motion to dismiss Tower Group because it was not Capurro's insurer will be discussed below.

|   |   |   |
|---|---|---|
| a. | | Refusing to promptly and adequately investigate Insured's claim for benefits; |
| b. | | Refusing to adopt, implement, and/or follow reasonable standards to investigate and process claims under the Polices; |
| c. | | Refusing to fairly handle Insured's claim for benefits; |
| d. | | Refusing to acknowledge and act reasonably promptly upon communications from Insured with respect to claims arising under the Polices; |
| e. | | Misrepresenting to Insured pertinent facts and insurance policy provisions relating to coverage at issue; |
| . . . | | |
| l. | | Refusing to promptly provide coverage due for indemnity and/or defense; |
| k. | | Refusing to promptly and adequately defend Insured; |
| . . . | | |
| n. | | Filing a suit against Insured to avoid benefits due; |
| o. | | Requiring Insured to file an action to obtain coverage due; |

Counterclaims, ¶ 25.

In order to establish a breach of the implied covenant of good faith and fair dealing under California law, a plaintiff must show (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable or without proper cause. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001) (*citing Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1151). "The key to a bad faith claim is whether or not the insurer's denial of coverage was reasonable." *Guebara*, 237 F.3d at 992. "Under California law, a bad faith claim can be dismissed on summary judgment if the defendant can show that there was a genuine dispute as to coverage." *Id.* This is known as the genuine dispute doctrine. *Id.* at 994.

Tower argues that because there was a genuine dispute as to whether the Policy covered Certa Pro's allegations, it is entitled to summary judgment on Capurro's claims for bad faith. In support, it cites *American Casualty Co. etc., v. Krieger*, 181 F.3d 1113, 1123 (9th Cir. 1999) and *Franchesi v. American Motorists Ins. Co.,* 852 F.2d 1217, 1220 (9th Cir. 1998). In *American Casualty*, the Ninth Circuit upheld the district court's finding that it was ambiguous whether the "sport or athletic contest/event" language in the policy applied to bungee jumping, and therefore the insurer was not unreasonable in denying coverage. 181 F.3d at 1123. Similarly, in *Franchesi,* the Ninth Circuit upheld the district court's finding that it was not clear whether a health policy's exclusion for "medical treatment" of pre-existing conditions applied to diagnostic procedures such as a colonoscopy, and therefore it was not unreasonable to deny coverage. 852 F.2d at 1220. Tower argues that "like the

11

insured in the cited cases, Tower Insurance based its disclaimer on a reasonable construction of the insuring agreements in the policy as applied to the *Certa Pro* action, and followed up to Capurro's challenges by requesting extrinsic facts, which Capurro's counsel refused to provide." MSJ at 18.

The Court finds that summary judgment is inappropriate here. In *American Casualty* and *Franchesi*, the issue was whether a policy's ambiguous term covered an activity that may not have been contemplated by the parties to the contract. Here, the issue is not whether Tower reasonably construed an ambiguous term in the Policy. Rather, the issue is Tower's characterization of the underlying action itself. Tower considered Certa Pro to be making only "passing references to trade dress and certain phrases that may qualify as slogans (along with trade names, trademarks, trade practices, and related concepts) in connection with [Certa Pro's] concerns about [Capurro's] operating a competing business," and therefore it disclaimed coverage. June 3rd Letter at 4. Tower's characterization of the complaint as one simply concerned about Capurro's operation of a competing business appears to have informed its decision to disclaim coverage. However, an insurer can "be found liable on a bad faith theory for conducting an investigation that is unjustifiably superficial or perfunctory *or that looks only in one self-serving direction* for evidence about the source, nature or extent of the claimed losses." *Berstein v. The Travelers Ins. Co.*, 447 F. Supp. 2d 1110, 1111-12 (N.D.Cal. 2006) (Brazil, J.) (original emphasis). Even assuming Tower's characterization of the Underlying Complaint is correct, it cannot disclaim coverage simply on the gravamen of the complaint; it must defend "mixed" actions as well. *Buss v. Superior Court*, 16 Cal. 4th 35 (Ca. 1997) ("To defend meaningfully, the insurer must defend immediately. To defend immediately, it must defend entirely. It cannot parse the claims, dividing those that are at least potentially covered from those that are not.") It is therefore a question for the jury as to whether Tower's analysis and characterization of the complaint and extrinsic facts were unreasonable.

Moreover, the *Franchesi* court found persuasive the fact that the insured engaged in its own investigation of the underlying claim. 852 F.2d at 1220 (insurer's claims supervisor "reviewed the Report of Operation, which would have informed him of the nature of the surgery involved.") Capurro alleges as part of its bad faith claim that Tower refused to investigate the claim entirely. The extent of Tower's investigation remains a genuine issue of material fact.

The Court therefore DENIES Tower's motion for partial summary judgment on Capurro's counterclaim for breach of the covenant of good faith and fair dealing.

### III. Tower's 12(b)(6) motion to dismiss Tower Group, Inc.

In its counterclaims, Capurro names Tower Group, Inc. as a defendant along with Tower Insurance. Capurro argues that Tower Insurance (the plaintiff in this action) is a subsidiary of Tower Group, Inc., and that "as the parental unit, Tower Group, Inc., is a proper party to Capurro's Counterclaim." Def.'s Response at 4. Tower moves to dismiss Tower Group pursuant to Fed. R. Civ. P. 12(b)(6), because a corporation's parent cannot in the usual course be sued, and that "limited liability is the rule, not the exception." Pl.'s Reply at 13 (*citing Anderson v. Abbot*, 321 U.S. 349, 362 (1944)). The "corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require." *Id.*, *citing Mesler v. Bragg Mgt. Co.*, 39 Cal. 3d 290, 300-01 (1985).

Capurro has provided no reasoning as to why Tower Group should be held liable for Tower Insurance's alleged breach of contract. The Court therefore GRANTS Tower's motion to dismiss Tower Group from the counterclaims.

**CONCLUSION**

Tower's motion for summary judgment seeking declaratory relief it its favor is DENIED, as is Tower's motion for partial summary judgment as to Capurros' counter-claim for breach of the covenant of good faith and fair dealing. Tower's motion to dismiss Tower Group from the counterclaims is GRANTED.

It is not clear whether the parties will contend that there remains a genuine issue of material fact regarding coverage *vel non*, since Capurro did not file a cross motion for summary judgment on this issue. The Court therefore orders that at the Case Management Conference on December 16, 2011, the parties to be prepared to discuss the appropriate next steps in this action, including whether summary judgment for Capurro on the coverage issue should be entered. *See* Rule 56(f)(1); *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir. 1982).

**IT IS SO ORDERED.**

Dated: December 15, 2011

SUSAN ILLSTON
United States District Judge