IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOWER INS. CO. OF NEW YORK, | No. C 11-03806 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CAPURRO ENTERPRISES INC., et al., | |
| Defendants. / | |
| AND RELATED COUNTERCLAIMS. / | |

Before the Court are cross motions for summary judgment. On February 21, 2012, defendants/ counterclaimaints Capurro Enterprises, Inc. and Nicholas J. Capurro, Jr. (collectively, "Capurro") filed a "Motion for Issue Adjudication - Tower Breach of Contract Without Cause," seeking: (1) adjudication on an issue of coverage left open by this Court's December 15, 2011 Order; and (2) summary judgment on its counterclaims against plaintiff/counter-defendant Tower Insurance Company of New York ("Tower") alleging breach of the duty to settle the underlying action and Tower's failure to pay policy benefits without cause. On February 24, 2012, Tower filed a motion styled as both an opposition to Capurro's motion for partial summary judgment and as a cross motion for summary judgment on the coverage issue. A hearing was held on the cross-motions on March 23, 2012. Having read the papers, and considered the parties' arguments, the Court hereby rules as follows.

**BACKGROUND**

This is an action seeking a declaration that Tower had no duty to defend or indemnify Capurro on a commercial general liability insurance policy that covered, among other things, "personal and advertising injury." Tower filed this action after a third party, Certa ProPainters ("Certa Pro"), filed a complaint against Capurro.

Along with his answer to Tower's declaratory relief complaint, Capurro filed counterclaims against Tower for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief, arising from Tower's alleged failure to defend, indemnify, and settle the underlying suit.

On December 15, 2011, the Court denied Tower's motion for summary judgment on its action seeking a declaration that it had no duty to defend. The Court left open the question of whether summary judgment should be granted in favor of Capurro on that issue.

**1.     The underlying claim**

The following facts are taken from the complaint in the underlying suit. Certa Pro is a national franchisor of painting franchises, which offer painting, decorating and related services to customers. Compl., Ex. 1 (Complaint, *Certa ProPainters Ltd. v. Capurro*, 10-CV1542 WHA) ("Underlying Complaint"). Capurro is a citizen of California and the president of Capurro Enterprises. In 2006, Certa Pro and Capurro entered into a franchise agreement, pursuant to which Capurro obtained the right to operate a Certa Pro franchised business for ten years. The agreement authorized Capurro to market and sell residential painting services under Certa Pro's "Proprietary Marks." The Proprietary Marks, according to Certa Pro, include, but are not limited to, "Certa ProPainters," "CertaPro," "The Color of Certainty," "Painting. Passion. Professionalism." and "Certainty Service System," all of which are registered with the United States Patent and Trademark Office. *Id.*, ¶ 10. In exchange for the use of Certa Pro's Proprietary Marks (as well as training, marketing, and other franchisee benefits), Capurro would pay Certa Pro a minimum royalty of $22,500 per year, as well as a percentage of Capurro's gross sales.

On December 30, 2009, Capurro notified Certa Pro that he wished to terminate the Franchise

Agreement. According to documents attached to the underlying complaint, Capurro parted ways with Certa Pro due to "low revenue numbers which affected [his] ability to pay minimum royalties." Underlying Compl., Ex. E (Def's Jan. 1, 2010 Response to Notice of Default and Letter to System Franchisees). Capurro thereafter began marketing a new business named Majestic Painters. According to Certa Pro, Capurro "established a website marketing [Majestic Painters], expressly referring to it as a 'former Certa Pro franchisee,' . . . advertising Certa Pro's Telephone Number used in connection with the Franchised Business, and stating that the Competing Business evolved from Capurro's 'first Painting Business, Certa ProPainters of Livermore." Underlying Compl., ¶ 40. The website also referred to Capurro's colorist "as a Certa Pro 'certified and trained colorist'" *Id.*, ¶ 41. An advertisement for Majestic Painting on another website listed Capurro's email address as "ncapurro@certapro.com." *Id.*, ¶ 43. Finally, on the greeting to his business telephone number, Capurro stated "you have reached Majestic Painters formerly known as Certa ProPainters . . ." *Id.*, ¶ 44.

In the Underlying Complaint, Certa Pro alleged that by "holding themselves out as a former Certa Pro franchisee who received Certa Pro training," Capurro was "trading on the Proprietary marks and confidential and proprietary information they obtained from Certa Pro."[2] Moreover, "the Defendants also continue to use the Proprietary Marks, Telephone Number, and Capurro's Certa Pro email . . . in commerce with their Competing Business, thereby wrongfully benefitting from Certa Pro's registered trademarks, trade dress, trade names and Certa Pro's Proprietary marks without license or authority from CertaPro." *Id.*, ¶ 53.

Based on these allegations, Certa Pro filed the Underlying Complaint against Capurro on April 9, 2010, alleging (1) trademark infringement under 15 U.S.C. § 1114, (2) false designation of origin under 15 U.S.C. § 1125(a), (3) common law trademark infringement, (4) unfair competition under Cal. Bus. & Prof. Code § 11700, (5) violation of Cal. Bus. & Prof. Code § 175000, (6) breach of covenant not to compete, (7) breach of contract, (8) unjust enrichment, (9) accounting, and (10) declaratory relief. The complaint sought injunctive relief to prevent Capurro from "performing any acts or omissions or using any service marks, trademarks, trade names, trade dress, words, names, styles, titles designs or marks that are likely to cause confusion or mistake, or to deceive . . ." *Id.* at 17. Certa Pro also sought

---

[2]Capurro does not admit to any allegations in the underlying complaint.

1 disgorgement, restitution of profits, and damages.

2 According to Capurro, the underlying claim has since settled for $20,000.

### 2. The insurance policy

Tower issued to Capurro Enterprises, Inc., a commercial general liability policy effective June 18, 2009 to June 19, 2010. The policy's "Coverage B - Personal and Advertising Injury Liability" section states that "[Tower] will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury.' We will have the right and duty to defend the insured against any 'suit' seeking those damages.'" Capurro Decl., Ex. 2 at 5 (the "Policy"). The Policy defines "personal and advertising injury," in relevant part, as the "use of another's advertising idea in your 'advertisement,'" as well as "[i]nfringing on another's copyright, trade dress or slogan in your 'advertisement.'" An "advertisement" is defined in the Policy as a "notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

The policy also excludes coverage for a series of potential advertising injuries. Relevant exclusions for the purposes of this case are:

> f. Breach of Contract - 'Personal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement.
>
> . . .
>
> I. Infringement of Copyright, Patent, Trademark or Trade Secret - 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.
> However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan.
>
> . . .
>
> l. Unauthorized Use of Another's Name or Product - 'Personal and advertising injury' arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

The policy therefore covers Capurro's use of another's advertising ideas, copyright, trade dress or slogans in Capurro's advertisements. It does not cover Capurro's infringements of another's

4

trademarks, nor Capurro's use of another's name or product in its e-mail address.

### 3. Claim tendered, defense denied

Certa Pro filed its suit against Capurro on April 9, 2010. On May 4, 2010, Capurro (through counsel) tendered Certa Pro's complaint to Tower, requesting that Tower provide a defense for Capurro in the underlying action and indemnify Capurro for any damages that may be assessed. Tingley Decl., Ex. A (the "May 4th letter"). Capurro stated a number of reasons that Certa Pro's complaint fell within the coverage of the Policy; for example, according to the May 4th letter, the underlying complaint "includes allegations that [Certa Pro] has been damaged as a result of the commission of advertising injury offenses – i.e., the use of [Certa Pro's] advertising ideas and infringement upon [Certa Pro's] copyright, trade dress or slogan. These offenses are alleged to have included the insured's use of advertising ideas, copyright, trade dress or slogans in their advertisements and promotions that imitate or simulate [Certa Pro's] advertising ideas, copyright, trade dress or slogan." *Id.,* at 2.

On June 3, 2010, Tower responded to the May 4th letter by disclaiming coverage of the underlying action, and declining to participate in the defense or to indemnify. Tingley Decl., Ex. B (the "June 3rd letter"). According to the June 3rd letter, Tower found that:

> [Certa Pro's] complaint alleges no facts to suggest that the defendant infringed any trade dress or slogans whether in an advertisement or at all. Rather, the complaint makes passing references to trade dress, and certain phrases that may qualify as slogans (along with trade name, trademarks, trade practices, and related concepts) in connection with the plaintiff's concerns about the defendant's operating a competing business and failing to pay royalty and advertising fees, and the damage these actions allegedly caused to plaintiff's overall business reputation and practices, including trade dress.

*Id.* at 4. Tower also cited to a number of the exclusions in the policy, arguing that even if the underlying complaint alleged facts suggesting infringement of trade dress or slogan, the Policy excludes coverage for the use of trade dress or slogans not part of the insured's advertisements; nor does it cover trademark claims, whether in an advertisement or not. Finally, Tower noted that while Certa Pro claims the right to a variety of slogans (including "The Color of Certainty," and "Painting. Passion. Professionalism."), the complaint does not allege that Capurro employed any of these phrases in its advertisements for Majestic Painters.

5

The June 3rd letter also addressed "Exclusion f" of the policy. Exclusion f withholds coverage from any personal and advertising injury "arising out of a breach of contract." The June 3rd letter did not assert that this exclusion applied to Certa Pro's claims of infringement, i.e., causes of action 1 through 3 in the underlying complaint. Instead, Tower asserted that, "Each of the plaintiff's fourth through tenth claims arises from its contractual relationship with the defendant under the terms of the franchise agreement, and depends upon a declaration that the franchise agreement is valid and that defendant has breached its terms. Accordingly, the above exclusion [f] applies to preclude coverage for these claims." Tingley Decl., Ex. B, at 6.

Thereafter, Capurro's counsel and Tower exchanged letters over the course of the following year arguing the merits of Tower's disclaimer of coverage. *See* Tingley Decl., Exs. C-F. Tower repeatedly affirmed its disclaimer of coverage based on its theory that the underlying complaint "did not allege any facts to suggest that [Capurro is] being sued for alleged infringement of any trade dress or slogan, or the use of Certa Pro's advertising ideas in an advertisement." Tingle Decl., Ex. E (March 15, 2011 letter); Tingley Decl., Ex. G (the April 26, 2011 letter) ("As my March 15 letter explained, however, the complaint does not allege any potential slogan infringement in the insureds' advertising.") The letters do not rely on the breach of contract exclusion.

On April 12, 2011, Capurro threatened a lawsuit and attached a draft complaint seeking a declaration that the underlying action was covered by the Policy. Tower responded by filing this action seeking a declaration that it owed no duty to defend. Capurro answered that complaint and filed counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.

**4.     Tower's motion for summary judgment and the Court's December 15, 2011 Order**

On October 27, 2011, Tower moved for summary judgment on its claim for declaratory judgment and on Capurro's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. Tower argued that no duty to defend arose from the Underlying Complaint because it did not allege the use of Certa Pro's advertising, copyrights, trade dress, and slogans in Capurro's advertisements.

6

The Court disagreed. In its December 15, 2011 Order Denying Tower's Motions for Summary Judgment and for Partial Summary Judgment, the Court found that the Underlying Complaint repeatedly alleged the wrongful use of Certa Pro's Proprietary Marks, including an allegation that Capurro was "wrongfully benefitting from Certa Pro's . . . trade dress." *See* Dec. 15 Order at 8 (*citing* Underlying Compl. ¶¶ 53-56). The Court also found that extrinsic facts tendered to Tower by Capurro supported Capurro's defense claim, including Capurro's admission that possible advertisements existed on the internet containing infringing material. *Id.* (citing Tingley Decl., Ex. C (May 4th Letter) at 1). The Court held that under controlling California law, while doubts may have existed, the claim tendered to Tower triggered the duty to defend. *Id.* at 9 (*citing Montrose Chemical Corp v. Superior Court of Los Angeles County*, 6 Cal. 4th 287, 299) ("[A]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor.")

The Court also denied Tower's alternative motion for partial summary judgment on Capurro's counterclaim for "bad faith." Capurro claims that Tower breached the covenant of good faith and fair dealing based on, *inter alia*, refusing to promptly and adequately investigate Capurro's claim and refusing to promptly provide coverage due for indemnity. Counterclaims, ¶ 25. The Court found that there remains "a question for the jury as to whether Tower's analysis and characterization of the complaint and extrinsic facts [in its disclaimer] were unreasonable," the required showing in a bad faith claim. Dec. 15 Order at 11 (*citing Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001)).

In the December 15, 2011 Order, the Court requested that the parties brief the issue of whether, in light of the Court's holding against Tower but without a cross motion from Capurro, summary judgment should be entered in favor of Capurro. *Id.* (*citing* Fed. R. Civ. P. 56(f)(1) and *Cool Fuel, Inc. v. Connett*, 685 F.2d 209, 311 (9th Cir. 1982)). The parties thereafter submitted letter briefs. Tower argued, for the first time to this Court, that exclusion f precluded coverage because, according to Tower, Certa Pro's claims "arose from a breach of contract," i.e., the Franchise Agreement between Certa Pro and Capurro. *See* Doc. 48 (January 5, 2012 Tower Letter Brief). In an Order issued January 23, 2012, the Court noted that *Cool Fuel* allows grant of summary judgment against the moving party only where that party had a "full and fair opportunity to ventilate the issues involved in the motion." Jan. 23, 2012 Order (*citing Cool Fuel*, 685 F.2d at 312). Because the parties had not yet briefed the issue relating to

7

1 the breach of contract exclusion, the Court found that summary judgment in favor of Capurro was
2 inappropriate, and required Capurro to file its own motion for summary judgment *Id.*

3 On February 21, 2012, Capurro filed such a motion, seeking "issue adjudication" on the breach
4 of contract exclusion, "as well as on coverage due for allegations of disparagement made in the
5 underlying action, Tower's breach of its duty to settle the underlying action on Capurro's behalf, and
6 Tower's failure to pay policy benefits without cause." Doc. 57, Capurro Notice of Mot.*,* 1. Tower
7 thereafter filed an opposition and cross motion for summary judgment again seeking declaratory relief
8 on its duty to defend or indemnify, and on Capurro's counterclaims. Doc. 62, Tower Not. of Cross
9 Motion, 1. A hearing was held on the cross motions on March 23, 2012.

## LEGAL STANDARD

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from

the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

**DISCUSSION**

**1.     Breach of contract exclusion**

The Policy's insuring clause states that Tower "will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages." In its list of exclusions, the Policy excludes, "(f) 'Personal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your 'advertisement.'"

Tower argues that Certa Pro's claims "arise from" a breach of contract, namely, the Franchise Agreement entered into by Certa Pro and Capurro . The Franchise Agreement authorized Capurro to use Certa Pro's Proprietary marks, but "only in connection with the Certa Pro Business and only in a manner that accurately depicts the Certa Proprietary Marks." Tower's Request for Judicial Notice, Ex. 1, (the Franchise Agreement, ¶ 9.2).[3] The Agreement further states that Capurro "shall not, during or after the term of this Agreement, engage in any conduct directly or indirectly which would infringe upon, harm or contest the rights of Certa Pro in any of the Certa Pro Proprietary Marks." *Id.*, ¶ 9.1. Tower argues that all of Certa Pro's claims against Capurro -- including its infringement claims -- fall within the breach of contract exclusion because they arose from breach of the Franchise Agreement.

In the underlying complaint, Certa Pro alleged the following infringement claims against Capurro:

> **First Claim for Relief** (Trademark Infringement, 15 U.S.C. § 1114)
>
> 63.   The Defendants' use of Certa Pro's Proprietary Marks and system to operate the Competing Business as alleged above is likely to cause confusion,

---
[3]The Court previously granted Tower's unopposed request for judicial notice, Doc. 24, in the Dec. 15, 2011 Order.

9

mistake or deception and constitutes infringement of federally registered service marks and trademarks in violation of 15 U.S.C. § 1114.

64. Plaintiff is informed, believes and thereon alleges, that Defendants used Certa Pro's Proprietary Marks and system to operate the Competing Business as alleged above with knowledge that the use would cause such confusion, mistake, or deception or with intent to cause such confusion, mistake or deception.

65. As a direct and proximate result, Certa Pro has suffered damage, and continues to suffer damages, to its business, reputation and goodwill.

66. Unless the Defendants' acts of trademark infringement are restrained and enjoined, Certa Pro will be seriously and irreparably damaged.

**Second Claim for Relief** (False Representation and False Designation of Origin, 15 U.S.C. § 1125(a))

67. Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 through 66, inclusive, above.

68. The Defendants' acts as averred above, including (I) referring to themselves as former Certa Pro franchisees in advertising materials and correspondence with actual and potential customers; (ii) using Certa Pro's Telephone Number and email addresses in connection with the Competing Business; and (iii) stating on Competing Business's website that the Competing Business has "evolved from CertaPro," constitute false designations of origin, false and misleading descriptions, and false and misleading representations, which are likely to cause confusion, mistake or deception and misrepresent the nature, characteristics and qualities of the Defendants' services and goods in violation of 15 U.S.C. § 1125(a).

69. As a direct and proximate result, Certa Pro has suffered, and continues to suffer, damage to its business, reputation and goodwill.

70. Unless the Defendants' acts in violation of 15 U.S.C. § 1125(a) are restrained and enjoined, Certa Pro will be seriously and irreparably damaged.

**Third Claim for Relief** (Common Law Trademark Infringement)

71. Plaintiff incorporates by reference, as though fully set forth herein, the allegations contained in paragraphs 1 though 70, inclusive, above.

72. The Defendants continue to operate the Competing Business in the Territory as "a former Certa Pro franchisee" and continues to use Certa Pro's Proprietary Marks, email address containing the Proprietary marks, and Telephone Number in connection with such Competing Business.

73. The Defendants' above averred acts constitute infringement in violation of common law.

Underlying Compl., ¶¶ 62-73 (the "Infringement Claims"). The Underlying Complaint also alleges seven other causes of action, including claims for breach of contract, breach of the covenant not to

compete during the term of the agreement, unfair competition, and unjust enrichment. *Id.*, ¶¶ 84-99 (Causes of Action IV-X). As described above, Tower initially disclaimed coverage for the Infringement Claims based on its theory that they did not implicate the advertising injury coverage because the claims did not assert Capurro infringed "any trade dress or slogans whether in an advertisement or at all." *See* June 3, 2010 Letter, at 4. At that time, Tower cited the breach of contract exclusion only to disclaim coverage of the latter seven causes of action. *Id.* ("Each of the plaintiff's fourth through tenth claims arises from its contractual relationship with the defendant . . .") Following the Court's December 15, 2011 Order denying Tower summary judgment on its advertising injury theory, Tower now claims that the breach of contract exclusion subsumes the Infringement Claims as well.

The question presented is whether alleged infringement of intellectual property is excluded from coverage under this CGL policy because it "arises from" the breach of a contract that previously authorized the use of that intellectual property. This question has not been explicitly addressed by California state courts, but the Ninth Circuit addressed it in *Zurich Insurance Co. v. Killer Music, Inc.*, 998 F.2d 674, 677-78 (9th Cir. 1993). There, the insured allegedly infringed the copyright of a party with whom it had a contract to sell songs, by continuing to sell those songs after the expiration of the contract. When the injured party brought suit and the insured tendered the claim, the insurer refused to pay defense costs or indemnify, citing a breach of contract exclusion in the insurance policy. The Ninth Circuit held that the breach of contract exclusion did not preclude insurance coverage for advertising injury. The court found that the insuring language triggered the duty to defend under California law, and that the contract exclusion did not exclude the claims asserted. In reaching that result, the court noted that some federal cases suggested that "the copyright infringement claim arose out of a breach of contract and was therefore not covered." However, other California cases suggested that such an infringement action sounded in tort instead of contract. *Id.* The "other cases" the court mentioned were two state court decisions that have since been overruled by the California Supreme court. *Id., citing Fragomeno v. Insurance Co. of the West*, 207 Cal. App.3d 822 (1989) and *Fireman's Fund Ins. Co. v. City of Turlock,* 170 Cal. App. 3d 988 (1985)*, overruled by Vandenberg v. Superior Court*, 21 Cal. 4th 815, n.12 (1999). Tower argues that this Court should disregard the Ninth Circuit precedent because it relied on cases that have since been overruled.

11

Other jurisdictions are split on the issue of whether breach of contract exclusions preclude coverage for advertising injuries where the underlying parties had a contract to use or sell the goods or intellectual property at issue. *See Callas Enterprises, Inc. v. Travelers Indem. Co. of America,* 193 F.3d 952, 954 (8th Cir. 1999) (applying Minnesota law, holding that injured party's claim that insured sold products of other manufacturers in breach of exclusive right-to-sell agreement was not covered by insurance policy due to breach of contract exclusion); *Sports Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453 (5th Cir. 2003) (applying Texas law, finding sale of goods outside of licensing agreement's territory was an advertising injury that arose out of the insured's breach of contract and thus excluded); *Westfield Ins. Co. v. Factfinder Marketing Researcher, Inc.*, 168 Ohio App. 3d 391, 404 (2006) ("[T]he parties clearly intended to exclude coverage when the infringement causing the advertising injury also violated a written licensing agreement governing the same trade dress and trademarks"); *but see Assurance Company of America v. J.P. Structures,* 1997 U.S. App. LEXIS 34565, at *14 (6th Cir. 1997) (applying Michigan law; "Defendants' breach of the contract caused its termination. Defendants' intentional unauthorized use of the mark caused the trademark infringement. The contract merely withdrew the authorization to use it. The advertising injury did not arise from the breach of contract."); *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, n. 15 (2nd Cir. 2001) (applying New York law, "[the injured party]'s claims against [the insured] exist independent of the contract. [The injured party]'s trademark rights arose long before it entered into the 1990 agreement with [the insured] and would exist even if [the insured] had never entered into that agreement and/or if that agreement had not been breached."); *Aearo Corporation v. American Int'l Specialty Lines Ins. Co.*, 676 F. Supp. 2d 738, 751 (S.D. Ind. 2009) (advertising claims not excluded because insured "could be held liable for a covered advertising injury based on a legal theory independent from breach of contract.")

Returning to California law, the California Supreme Court has consistently held that "insurance policies are to be interpreted broadly so as to afford the greatest possible protection to the insured." *PMI Mortg. Ins. Co. v. American Intern. Specialty Lines Ins. Co.*, 394 F.3d 761, 765 (9th Cir. 2005) (*citing MacKinnon v. Truck Ins. Exchange*, 31 Cal. 4th 635, 647 (2003)). This principle requires a court to take opposite approaches to insuring and exclusionary clauses. While "coverage clauses are interpreted

12

broadly so as to afford the greatest possible protection to the insured . . . exclusionary clauses are interpreted narrowly against the insurer." *State Farm Mut. Auto. Ins. Co. v Partridge*, 10 Cal. 3d 94, 101 (1973) (*citing Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal. 2d 423, 437-38 (1956)).

This principle of construction - that coverage clauses are construed broadly and exclusions narrowly - strikes in favor of Capurro's argument that the exclusion of claims "arising out of a breach of contract" does not apply to Certa Pro's Infringement Claims. Tower acknowledges this principle, but argues that it only applies where policy language is ambiguous. Tower's Opp. at 4 (*citing Smyth v. USAA Prop. & Cas. Ins. Co.*, 5 Cal. App. 4th 1470, 1474 (1992)). According to Tower, exclusionary clauses with unambiguous language are not subject to the narrow-exclusion principle, and the phrase "arising out of" is unambiguous under Ninth Circuit precedent. *Id.* (*citing Continental Casualty Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985)). Tower argues that "arising out of" is always construed broadly, even in exclusionary clauses, and therefore the breach of contract exclusion subsumes Certa Pro's Infringement Claims.

The Court disagrees, both with Tower's principle of construction and as applied here. No case has flatly stated that California's longstanding rule of reading exclusionary clauses narrowly applies only when the clause contains ambiguous language. Tower cites *Smith v. USAA* for this proposition, pointing to its statement that, "[A]ny doubts, uncertainties, or ambiguities in policy language must be resolved in favor of the insured. However, this principle of construction comes into play only if it is first determined that an ambiguity exists, which is also a question of law." 5 Cal. App. 4th at 1474. However, reading ambiguities against the drafter is a separate principle of construction, one that applies to contract construction generally. *See Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534, 539 (9th Cir. 1990) ("This rule of *contra proferentem* has been called the most familiar expression in the reports of insurance cases."). It is not explicitly a limiting principle to the narrow-exclusion rule. In fact, *Smyth* does state a limiting principle to the narrow exclusion rule in the prior paragraph:

> Coverage provisions are construed broadly in favor of the insured, while exclusion provisions are construed strictly against the insurer. However, strict construction does not mean strained construction; under the guise of strict construction, we may not rewrite a policy to bind the insurer to a risk that it did not contemplate and for which it has not been paid.

*Smyth*, 5 Cal. App. 4th 1470 at 1474. This is the correct limiting principle. The Court does not find it

appropriate here to limit one longstanding California rule of construction by importing another.

The broad coverage-narrow exclusion principle is well illustrated with respect to the phrase "arising out of" in *State Farm Mutual Auto. Ins. Co. v. Partridge*, 10 Cal. 3d 94, 101-02 (1973). There, the insured had two insurance policies with State Farm, an automobile policy and a homeowners' policy. A passenger in the insured's vehicle brought suit against the insured after the insured accidentally shot the passenger while hunting rabbits from his moving vehicle. The automobile policy *covered* injuries "arising out of the use" of an automobile, while the homeowners' policy *excluded* coverage for bodily injury "arising out of the use of any motor vehicle." Nonetheless, the court held the policies were not mutually exclusive. "[A]lthough the language in the two policies is substantially similar, past authorities have made it abundantly clear that an entirely different rule of construction applies to exclusionary clauses as distinguished from coverage clauses . . . [T]he fact that an accident has been found to 'arise out of the use' of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within a similarly worded exclusionary clause of a homeowner's policy." *Id.* at 102. The court found that coverage was owed under both policies.[4]

Tower argues that the Ninth Circuit, in *City of Richmond*, read the phrase "arising out of" broadly in an exclusionary clause to preclude coverage, and thus this Court should do so here. 763 F.2d at 1080. There, three minor children of Willie Lee Drumgoole filed an action against the City of Richmond (the "City") seeking damages under the California Wrongful Death Statute and 42 U.S.C. §§ 1981, 1983, and 1985, as a result of Drumgoole's death while in police custody in the Richmond jail. The complaint alleged that ten Richmond police officers assaulted, beat, and choked Drumgoole while he was detained in the jail, causing his death. The complainant alleged, along with wrongful death, a claim for discrimination based upon a pattern and practice of police brutality and excessive force due to inadequate training and supervision of City employees. The City tendered the complaint to their insurer Continental Casualty. The insurance policy contained an exclusionary clause that excepted coverage for claims "arising directly or consequentially from bodily injury, mental anguish, sickness, disease, or death of any person." *Id.* at 1078. Continental disclaimed coverage based on this exclusion.

---

[4]The court held the homeowner's policy applied on the ground that the injury to the passenger had a cause outside of the "use" of the vehicle: the fact that the insured had negligently filed down the trigger on his gun to create "hair trigger" action. *Partridge*, 10 Cal. at 102.

14

The City responded that coverage was owed on at least the plaintiffs' discrimination claims, because the "practice of discriminatory conduct and inadequate training and supervision of city employees allegedly predated the particular misconduct directed toward Drumgoole." *Id.* The Ninth Circuit disagreed. Noting the broad definition given to the phrase "arising from" by California courts - "one court equating 'arising out of' with origination, growth, or flown from the event" - the court found that the complainants' "pattern and practice claim is related more than just incidentally to Drumgoole's injuries." *Id.* at 1080 (*citing Pacific Indemnity Co. v. Truck Insurance Exchange*, 270 Cal. App. 2d 700, 704 (3d Dist. 1969)). The court continued,

> Had the alleged pattern and practice of discrimination not manifested itself in the injury to Drumgoole, the heirs would have no claim for relief against the City. Indeed, the very existence of the heirs' section 1983 claim, as well as those asserted under sections 1981 and 1985, depends upon there being an identifiable injury to Drumgoole. Similarly, there exists a close connection between the heirs' second claim (failure of the Richmond police to administer proper medical care to the decedent) and the decedent's injuries. No medical treatment would have been needed if Drumgoole had not suffered any bodily harm at the hands of the police. The heirs' third claim (for alleged biased investigation of the case designed to protect the persons responsible for the misconduct) also clearly finds it genesis in the attack on Drumgoole. Had the attack never occurred, no investigation of Drumgoole's death would have been necessary.

*Id.* at 1081. The Ninth Circuit agreed with Continental that coverage was not owed. *Id.* at 1084.

According to Tower, *Continental* requires a broad reading of "arising out of" clauses even when found in exclusions, and that therefore this Court should read the breach of contract exclusion to encompass advertising injuries that simultaneously constitute breach of the insured's contractual duties. Tower Reply at 1. In other words, according to Tower, any wrong that constitutes a breach of contract necessarily "arises from" that breach.

The Court disagrees, and finds that the breach of contract exclusion does not preclude coverage of Certa Pro's claims against Capurro. There is a fundamental difference between the *Continental* claims and those presented here. In *Continental,* the Ninth Circuit relied on the fact that the claims for discrimination existed only *because of* Drumgoole's injuries; that "the very existence of the heirs' section 1983 claim, as well as those asserted under sections 1981 and 1985, depend[ed] upon there being an identifiable injury to Drumgoole." *Id.* at 1081. Here, on the other hand, the alleged wrongs committed by Capurro constituted legally cognizable claims whether or not a contract ever existed.

Capurro need not have entered into a contract with Certa Pro or ever been authorized to use their intellectual property in order to infringe that property. Indeed, none of Certa Pro's three Infringement Claims mention the Franchise Agreement. Even under *Continental's* broad conception of "arising out of" clauses in exclusions, the Policy's breach of contract exclusion does not reach Certa Pro's Infringement Claims.

Construing the policy in Capurro's favor, the exclusionary clause narrowly, and resolving ambiguities in favor of the insured, Certa Pro's claims do not fall within the breach of contract exclusion. The Court therefore GRANTS Capurro's motion for "issue adjudication" on the exclusion issue, and DENIES Tower's motion for summary judgment. Because the Court found in its December 15, 2011 Order that the Underlying Claim fell within the insuring clause, and because it now finds that the exclusions do not apply, the Court finds that Tower breached its duty to defend Capurro in the underlying action.

### 2. Coverage for disparagement

Capurro also characterizes Certa Pro's claims as claims of "disparagement," and argues that they triggered the duty to defend as well. The Policy covered personal and advertising injury arising out of the "oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's organization's goods, products, or services." Policy Definitions, ¶ 14. Capurro argues that Certa Pro's Infringement Claims fall within the covered disparagement, because even though Certa Pro never claimed Capurro made negative statements about them, a defendant does not need to negatively identify a plaintiff's products or services for this coverage to apply. Capurro's MSJ at 11 (*citing Michael Taylor Designs, Inc. v. Travelers Property Cas. Co. of America*, 761 F. Supp. 2d 904, 910-11 (N.D. Cal. 2011) (Seeborg, J.) (coverage due for alleged damage to the reputation of plaintiff's goods or services by insured's alleged offering of inferior imitations of plaintiff's goods or services); *Meta Lite, Inc. v. Brady Constr Innovations, Inc.*, 558 F. Supp. 2d 1084, 1093) (C.D. Cal. 2007).

The Court disagrees. California courts have held that "to state a disparagement claim, the underlying plaintiff must allege that defendant made false, injurious, or derogatory statements about a

plaintiff's products, which caused it to suffer pecuniary damages." *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244, 1252 (N.D. Cal. 2008) (Ware, J.) (*citing Truck Ins. Exchange v. Bennett,* 53 Cal. App. 4th 75, 89 (1997)). Capurro cites *Michael Taylor Designs* for the proposition that the underlying defendant need not negatively identify the plaintiff's products or services to allege a claim for disparagement. 761 F.Supp.2d at 910-11. This statement of law is correct. *Id.*; *see also E.piphany*, 590 F.Supp. 2d at 1251. However, the facts alleged here do not rise to the level of reputational harm found in *Michael Taylor Designs*. There, the underlying defendant had allegedly sold "cheap synthetic knock-offs" to customers under the guise that they were originals designed by the underlying plaintiff. Judge Seeborg stated that a marketing brochure that attempted to pass off the plaintiff's products under the imitation products' name was not, by itself, sufficient to support a potential claim for disparagement, because a picture of a plaintiff's actual products "cannot be said to impugn the quality" of those products. *Id.* at 912. However, the additional allegation in the complaint that the defendant then "steered" customers in the showroom to the imitation products converted the claim into one of disparagement. "The term 'steered' fairly implies some *further* statements, presumably oral, were being made by [the underlying defendant] to convey information that the imitation products were the [plaintiff's product] depicted in the brochure." *Id.* (emphasis in original). In other words, a customer was likely to attribute a lesser quality product to the underlying plaintiff, thereby damaging its reputation.

Here, the gist of Certa Pro's complaint was that Capurro used its marks while holding itself out as a "former" Certa Pro franchisee. *See* Underlying Compl, ¶ 40 (Capurro stated that the Competing Business "evolved" from Capurro's 'first Painting Business, Certa ProPainters of Livermore."); ¶ 44 (on the greeting to his business telephone number, Capurro stated "you have reached Majestic Painters formerly known as Certa ProPainters . . ."). While one could imply that Capurro might entice customers through the use of Certa Pro's marks, there were no allegations suggesting Capurro would paint the house of a customer under the guise of a *current* Certa Pro painter and thereby damage the reputation of Certa Pro. *See Jarrow Formulas, Inc. v. Steadfast, Ins. Co.*, 2011 WL 1399805, at *7 (C.D. Cal. 2011) (distinguishing *Michael Taylor* on the ground that it relied on facts in addition to the infringing acts). Nor did Capurro's acts suggest that Certa Pro's products were inferior to his own. *See E.*

17

*piphany,* 590 F. Supp. 2d at 1252.

On its claim that Tower had the duty to defend Capurro against allegations of disparagement in the Underlying Action, Capurro's motion for summary judgment is DENIED.

### 3. Liability for the settlement

Capurro argues that Tower's failure to defend Capurro further means Tower is liable for the entire settlement, including even sums the Policy may not indemnify. Capurro MSJ, at 11 (*citing Pershing Park Villas Homeowners Assn. v. United Pacific Ins. Co.*, 219 F.3d 895, 901 (9th Cir. 2000) ("[t]he general rule is long settled in California that an insurer that wrongfully refuses to defend is liable on the judgment against the insured"); *Align Technology, Inc. v. Federal Ins. Co.* 673 F. Supp. 2d 957, 972 (N.D. Cal. 2009) (Whyte, J.). Tower disagrees, and argues that if the Court rules in Capurro's favor on the defense duty, Capurro is only entitled to defense damages, as actual coverage has not yet been determined. Tower Reply at 14 (*citing American Int'l Spec. Lines Ins. Co. v. Continental Cas. Ins. Co.*, 142 Ca. App. 4th 1342, 1370 (2006) ("If there was a potential for coverage [and thus a defense duty] but no actual coverage, the insured is entitled to recover the cost of the defense but must bear the judgment.")).

The cases cited by the parties appear to state contradictory principles. Because the underlying result in this case was a settlement, and not a judgment, the Court will follow the California case that specifically addresses a breach of the defense duty followed by a settlement. "If an insurer wrongfully fails to provide coverage or a defense, and the insured then settles the claim, the insured is given the benefit of an evidentiary presumption. In a later action against the insurer for reimbursement based on a breach of its contractual duty to defend the action, a reasonable settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of such liability." *Isaacson v. California Ins. Guarantee Assn.***,** 44 Cal. 3d 775, 791, 750 P.2d 297 (1988).

Here, the Court has found that Tower breached the defense duty. At this stage, Capurro is entitled to defense damages, as well as to an evidentiary presumption as to the existence and amount of liability, which, according to Capurro, is $20,000.

#### 4. Refusal to pay policy benefits "without cause"

Capurro moves the Court to find that Tower refused to pay policy benefits "without cause." Capurro MSJ at 13 (*citing Bob Lewis Volkwagon v. Universal Underwriters Group*, 571 F. Supp. 2d 1148, 1156 (N.D. Cal. 2008) (Whyte, J.) ("Before an insurer can be found to have acted tortiously, *i.e.*, in bad faith, in refusing to bestow policy benefits, it must have done so 'without proper cause.'")

To establish a breach of the implied covenant of good faith and fair dealing, a plaintiff must show: (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable *or* without proper cause. *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1151, (1990). In its December 15, 2011 Order, the Court denied Tower's motion for summary judgment on Capurro's counterclaim that Tower breached the implied covenant of good faith and fair dealing. The Court found there to be "a question for the jury as to whether Tower's analysis and characterization of the complaint and extrinsic facts were unreasonable." *See* Dec. 15 Order at 12. The same is true with respect to whether the benefits were withheld without cause: it remains a question for the jury. Capurro's motion for summary judgment on the issue is DENIED.

## CONCLUSION

Capurro's motion for "issue adjudication" on the breach of contract exclusionary clause is GRANTED; Tower's motion for summary judgment is DENIED. On the issue of the breach of the duty to defend, summary judgment is entered in favor of Capurro.

Capurro's motion for summary judgment on coverage for disparagement claims is DENIED. With respect to Tower's liability for the settlement, and whether the breach of contract was "without clause," both questions remain open, and therefore Capurro's motion on those issues is DENIED.

**IT IS SO ORDERED.**

Dated: April 2, 2012

_____
SUSAN ILLSTON
United States District Judge