IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOWER INS. CO. OF NEW YORK, | No. C 11-03806 SI |
|     Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
|   v. | |
| CAPURRO ENTERPRISES INC., et al., | |
|     Defendants. / | |
| AND RELATED COUNTERCLAIMS. / | |

Before the Court is plaintiff/counter-defendant Tower's motion for partial summary judgment on defendant/counter-claimant Capurro's counterclaim for breach of the implied covenant of good faith and prayer for punitive damages. Capurro filed an opposition on August 17, 2012; Tower then replied on August 24, 2012. Having read the papers, and considered the parties' arguments, the Court hereby DENIES Tower's motion.

**BACKGROUND**

Tower instituted this action seeking a declaration that it owed no duty to defend or indemnify Capurro in a third party suit filed against Capurro. Capurro thereafter filed counterclaims against Tower for breach of contract and breach of the implied covenant of good faith and fair dealing. As set forth in more detail below, in two prior summary judgment orders the Court found Tower did owe a duty to defend. *See* Dkts. 45 (Dec. 15, 2011 Order) and 68 (April 2, 2012 Order). In the December 15, 2011 Order, the Court also denied Tower's motion for summary judgment with respect to Capurro's

counterclaim for breach of the implied covenant of good faith and fair dealing. The Court held that it is a question for the jury whether or not Tower's withholding of benefits was unreasonable, a necessary element of a claim for breach of the implied covenant. *See* Dkt. 45 at 12-13.

Tower again files a motion for summary judgment on the breach of the implied covenant counter-claim, this time arguing that it cannot be held liable because it relied on the advice of counsel in denying Capurro's claim. The factual and procedural background of this case is as follows.

### 1. The underlying claim

Certa Pro is a national franchisor of painting franchises, which offer painting, decorating and related services to customers. Compl., Ex. 1 (Complaint, *Certa ProPainters Ltd. v. Capurro*, 10-CV1542 WHA) ("Underlying Complaint"). Capurro is a citizen of California and the president of Capurro Enterprises. In 2006, Certa Pro and Capurro entered into a franchise agreement, pursuant to which Capurro obtained the right to operate a Certa Pro franchised business for ten years. The agreement authorized Capurro to market and sell residential painting services under Certa Pro's "Proprietary Marks." The Proprietary Marks, according to Certa Pro, include, but are not limited to, "Certa ProPainters," "CertaPro," "The Color of Certainty," "Painting. Passion. Professionalism." and "Certainty Service System," all of which are registered with the United States Patent and Trademark Office. *Id.*, ¶ 10. In exchange for the use of Certa Pro's Proprietary Marks (as well as training, marketing, and other franchisee benefits), Capurro was to pay Certa Pro a minimum royalty of $22,500 per year, as well as a percentage of Capurro's gross sales.

On December 30, 2009, Capurro notified Certa Pro that he wished to terminate the Franchise Agreement. According to documents attached to the underlying complaint, Capurro parted ways with Certa Pro due to "low revenue numbers which affected [his] ability to pay minimum royalties." Underlying Compl., Ex. E (Def's Jan. 1, 2010 Response to Notice of Default and Letter to System Franchisees). Capurro thereafter began marketing a new business named Majestic Painters. According to Certa Pro, Capurro "established a website marketing [Majestic Painters], expressly referring to it as a 'former Certa Pro franchisee,' . . . advertising Certa Pro's Telephone Number used in connection with the Franchised Business, and stating that the Competing Business evolved from Capurro's 'first Painting

Business, Certa ProPainters of Livermore." Underlying Compl., ¶ 40. The website also referred to Capurro's colorist "as a Certa Pro 'certified and trained colorist'" *Id.,* ¶ 41. An advertisement for Majestic Painting on another website listed Capurro's email address as "ncapurro@certapro.com." *Id.,* ¶ 43. Finally, on the greeting to his business telephone number, Capurro stated "you have reached Majestic Painters formerly known as Certa ProPainters . . ." *Id.,* ¶ 44.

In the Underlying Complaint, Certa Pro alleged that by "holding themselves out as a former Certa Pro franchisee who received Certa Pro training," Capurro was "trading on the Proprietary marks and confidential and proprietary information they obtained from Certa Pro."[2] Moreover, "the Defendants also continue to use the Proprietary Marks, Telephone Number, and Capurro's Certa Pro email . . . in commerce with their Competing Business, thereby wrongfully benefitting from Certa Pro's registered trademarks, trade dress, trade names and Certa Pro's Proprietary marks without license or authority from CertaPro." *Id.*, ¶ 53.

Based on these allegations, Certa Pro filed the Underlying Complaint against Capurro on April 9, 2010, alleging (1) trademark infringement under 15 U.S.C. § 1114, (2) false designation of origin under 15 U.S.C. § 1125(a), (3) common law trademark infringement, (4) unfair competition under Cal. Bus. & Prof. Code § 11700, (5) violation of Cal. Bus. & Prof. Code § 175000, (6) breach of covenant not to compete, (7) breach of contract, (8) unjust enrichment, (9) accounting, and (10) declaratory relief. The complaint sought injunctive relief to prevent Capurro from "performing any acts or omissions or using any service marks, trademarks, trade names, trade dress, words, names, styles, titles designs or marks that are likely to cause confusion or mistake, or to deceive . . ." *Id.* at 17. Certa Pro also sought disgorgement, restitution of profits, and damages. The Court refers to the first three causes of action as the "Infringement Claims."

According to Capurro, the underlying claim has since settled for $20,000.

### 2. The insurance policy

Tower issued to Capurro Enterprises, Inc., a commercial general liability policy effective June 18, 2009 to June 19, 2010. The policy's "Coverage B - Personal and Advertising Injury Liability"

---

[2]Capurro does not admit to any allegations in the underlying complaint.

3

section provides that "[Tower] will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury.' We will have the right and duty to defend the insured against any 'suit' seeking those damages.'" Capurro Decl., Ex. 2 at 5 (the "Policy"). The Policy defines "personal and advertising injury,'" in relevant part, as the "use of another's advertising idea in your 'advertisement," as well as "[i]nfringing on another's copyright, trade dress or slogan in your 'advertisement.'" An "advertisement" is defined in the Policy as a "notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters."

The policy excludes coverage for a series of potential advertising injuries. Relevant exclusions for the purposes of this case are:

    f.    Breach of Contract - 'Personal and advertising injury' arising out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement.

. . .

    i.    Infringement of Copyright, Patent, Trademark or Trade Secret - 'Personal and advertising injury' arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.
However, this exclusion does not apply to infringement, in your 'advertisement', of copyright, trade dress or slogan.

. . .

    l.    Unauthorized Use of Another's Name or Product - 'Personal and advertising injury' arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

The policy therefore covers Capurro's use of another's advertising ideas, copyright, trade dress or slogans in Capurro's advertisements. It does not cover Capurro's infringements of another's trademarks, nor Capurro's use of another's name or product in its e-mail address.

**3.    Claim tendered, defense denied**

Certa Pro filed its suit against Capurro on April 9, 2010. On May 4, 2010, Capurro (through counsel) tendered Certa Pro's complaint to Tower, requesting that Tower provide a defense for Capurro in the underlying action and indemnify Capurro for any damages that may be assessed. Tingley Decl.,

4

Ex. A (the "May 4th letter"). Capurro stated a number of reasons that Certa Pro's complaint fell within the coverage of the Policy; for example, according to the May 4th letter, the underlying complaint "includes allegations that [Certa Pro] has been damaged as a result of the commission of advertising injury offenses – i.e., the use of [Certa Pro's] advertising ideas and infringement upon [Certa Pro's] copyright, trade dress or slogan. These offenses are alleged to have included the insured's use of advertising ideas, copyright, trade dress or slogans in their advertisements and promotions that imitate or simulate [Certa Pro's] advertising ideas, copyright, trade dress or slogan." *Id.,* at 2.

On June 3, 2010, Tower responded to the May 4th letter by disclaiming coverage of the underlying action, and declining to participate in the defense or to indemnify. Tingley Decl., Ex. B (the "June 3rd letter"). According to the June 3rd letter, Tower found that:

> [Certa Pro's] complaint alleges no facts to suggest that the defendant infringed any trade dress or slogans whether in an advertisement or at all. Rather, the complaint makes passing references to trade dress, and certain phrases that may qualify as slogans (along with trade name, trademarks, trade practices, and related concepts) in connection with the plaintiff's concerns about the defendant's operating a competing business and failing to pay royalty and advertising fees, and the damage these actions allegedly caused to plaintiff's overall business reputation and practices, including trade dress.

*Id.* at 4. Tower also cited to a number of the exclusions in the policy, arguing that even if the underlying complaint alleged facts suggesting infringement of trade dress or slogan, the Policy excludes coverage for the use of trade dress or slogans not part of the insured's advertisements; and that it excludes trademark claims, whether in an advertisement or not. Tower further noted that while Certa Pro claims the right to a variety of slogans (including "The Color of Certainty," and "Painting. Passion. Professionalism."), the complaint does not allege that Capurro employed any of these phrases in its advertisements for Majestic Painters.

The June 3rd letter also addressed "Exclusion f" of the policy. Exclusion f withholds coverage from any personal and advertising injury "arising out of a breach of contract." The June 3rd letter did not assert that this exclusion applied to Certa Pro's Infringement Claims (claims 1 through 3). Instead, Tower asserted that, "Each of the plaintiff's fourth through tenth claims arises from its contractual relationship with the defendant under the terms of the franchise agreement, and depends upon a declaration that the franchise agreement is valid and that defendant has breached its terms.

5

Accordingly, the above exclusion [f] applies to preclude coverage for these claims." Tingley Decl., Ex. B, at 6.

Capurro's counsel and Tower exchanged correspondence over the course of the following year arguing the merits of Tower's disclaimer of coverage. *See* Tingley Decl., Exs. C-F. Tower repeatedly affirmed its disclaimer of coverage based on its theory that the underlying complaint "did not allege any facts to suggest that [Capurro is] being sued for alleged infringement of any trade dress or slogan, or the use of Certa Pro's advertising ideas in an advertisement." Tingle Decl., Ex. E (March 15, 2011 letter); Tingley Decl., Ex. G (the April 26, 2011 letter) ("As my March 15 letter explained, however, the complaint does not allege any potential slogan infringement in the insureds' advertising.") The letters did not rely on the breach of contract exclusion.

On April 12, 2011, Capurro threatened a lawsuit and attached a draft complaint seeking a declaration that the underlying action was covered by the Policy. Tower responded by filing this action seeking a declaration that it owed no duty to defend. Capurro answered that complaint and filed counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, and declaratory relief.

**4.     Tower's motion for summary judgment and the Court's December 15, 2011 Order**

On October 27, 2011, Tower moved for summary judgment on its claim for declaratory relief and on Capurro's counterclaims for breach of contract and breach of the implied covenant of good faith and fair dealing. Tower argued that no duty to defend arose from the Underlying Complaint because it did not allege the use of Certa Pro's advertising, copyrights, trade dress, and slogans in Capurro's advertisements.

The Court disagreed. In its December 15, 2011 Order Denying Tower's Motions for Summary Judgment and for Partial Summary Judgment, the Court found that the Underlying Complaint repeatedly alleged the wrongful use of Certa Pro's Proprietary Marks, including an allegation that Capurro was "wrongfully benefitting from Certa Pro's . . . trade dress." *See* Dec. 15 Order at 8 (*citing* Underlying Compl. ¶¶ 53-56). The Court also found that extrinsic facts tendered to Tower by Capurro supported Capurro's defense claim, including Capurro's admission that possible advertisements existed

6

on the internet containing infringing material. *Id.* (citing Tingley Decl., Ex. C (May 4th Letter) at 1). The Court held that under controlling California law, while doubts may have existed, the claim tendered to Tower triggered the duty to defend. *Id.* at 9 (*citing Montrose Chemical Corp v. Superior Court of Los Angeles County*, 6 Cal. 4th 287, 299) ("[A]ny doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor.").

The Court also denied Tower's alternative motion for partial summary judgment on Capurro's counterclaim for bad faith. Capurro claims that Tower breached the covenant of good faith and fair dealing based on, *inter alia*, refusing to promptly and adequately investigate Capurro's claim and refusing to promptly provide coverage due for indemnity. Counterclaims, ¶ 25. The Court found that there remains "a question for the jury as to whether Tower's analysis and characterization of the complaint and extrinsic facts [in its disclaimer] were unreasonable," the required showing in a bad faith claim. Dec. 15 Order at 11 (*citing Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001)).

In the December 15, 2011 Order, the Court requested that the parties brief the issue of whether, in light of the Court's holding against Tower but without a cross motion from Capurro, summary judgment should be entered in favor of Capurro. *Id.* (*citing* Fed. R. Civ. P. 56(f)(1) and *Cool Fuel, Inc. v. Connett*, 685 F.2d 209, 311 (9th Cir. 1982)). The parties thereafter submitted letter briefs. Tower argued, for the first time to this Court, that exclusion f precluded coverage because, according to Tower, Certa Pro's claims "arose from a breach of contract," i.e., the Franchise Agreement between Certa Pro and Capurro. *See* Doc. 48 (January 5, 2012 Tower Letter Brief). In an Order issued January 23, 2012, the Court noted that *Cool Fuel* allows grant of summary judgment against the moving party only where that party had a "full and fair opportunity to ventilate the issues involved in the motion." Jan. 23, 2012 Order (*citing Cool Fuel*, 685 F.2d at 312). Because the parties had not yet briefed the issue relating to the breach of contract exclusion, the Court found that summary judgment in favor of Capurro was inappropriate, and requested that Capurro file its own motion for summary judgment *Id.*

### 5. **April 2, 2012 Order**

The parties thereafter filed cross motions for summary judgment. Capurro sought "issue adjudication" on the breach of contract exclusion, "as well as on coverage due for allegations of

7

disparagement made in the underlying action, Tower's breach of its duty to settle the underlying action on Capurro's behalf, and Tower's failure to pay policy benefits without cause." Doc. 57, Capurro Notice of Mot.*,* 1. Tower filed an opposition and cross-motion for summary judgment, again seeking declaratory relief on its duty to defend or indemnify, and on Capurro's counterclaims. Doc. 62, Tower Not. of Cross Motion, 1. In this round of summary judgment briefing, Tower focused exclusively on the breach of contract exclusion.

On April 2, 2012, the Court issued an Order Granting in Part and Denying in Part Capurro's Motion for Summary Judgment; and Denying Tower's Motion fo Summary Judgment. Doc. 68. The Court found that the Policy's breach of contract exclusion did not apply to CertaPro's allegations of infringement, and granted summary judgment in favor of Capurro on the issue of the duty to defend. The Court, applying the rules of construction for exclusionary clauses in insurance contracts, found that because "the alleged wrongs committed by Capurro constituted legally cognizable claims whether or not a contract ever existed," they did not "aris[e] out of a breach of contract" within the meaning of the Policy. *Id.* at 15-16. However, the Court denied Capurro's motion for summary judgment on the bad faith claim, citing the Court's December 15, 2011 finding that it is "a question for the jury as to whether Tower's analysis and characterization of the complaint and extrinsic facts were unreasonable." *Id.* at 19.

Tower now moves a third time for partial summary judgment, requesting that the Court find as a matter of law that it cannot be liable for breach of the implied covenant of good faith and fair dealing because it relied on the advice of counsel.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving

8

party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

## DISCUSSION

Tower moves for partial summary judgment on Capurro's counterclaim for breach of the implied covenant of good faith and fair dealing because, Tower argues, it relied on the advice of independent coverage counsel in denying Capurro's claim. Pl.'s Mot. at 2. The relevant facts are as follows. CertaPro filed suit against Capurro on April 9, 2010. Compl., Ex. A. Capurro tendered the complaint, through counsel, to Tower on May 4, 2010. *Id.*, Ex. B. The claim was assigned to Brian Osterholt, a Senior Claims Examiner for Tower. Osterholt Decl. ¶¶ 1-2. In a declaration attached to the instant motion, Osterholt states that he was uncertain as to the application of the "personal and advertising injury" portion of the Policy to CertaPro's complaint, and decided to seek the advice of outside coverage counsel. *Id.* He then provided the materials he had received to attorney James Nielsen of Nielsen, Haley & Abbot LLP. On May 27, 2010, Nielsen sent an email to Osterholt concluding that Tower had

no duty to defend. Osterholt Decl., Ex. B. Nielsen believed that the policy's "trademark exclusion precluded coverage for the trademark claims (1-3)" and the breach of contract exclusion precluded coverage for the breach of contract and implied covenant claims. *Id.* at 1. Expounding on the breach of contract exclusion, Nielsen stated:

> Finally, we note that, while the policy exclusion for contractual liability may apply to many claims in the tendered suit, it would not apply to any infringement claims unless those claims would not have been viable but for the contract. At this point, that conclusion is not clear, and unlikely to apply to at least some of the claims.

*Id.* at 3. Nielsen provided a proposed letter disclaiming coverage. Wendell Decl., Ex. A at 9-14. On June 3, 2010, Tower sent the proposed letter, on its letterhead, to Capurro, disclaiming coverage of CertaPro's complaint as well as its duty to defend. Compl., Ex. C. Consistent with Nielsen's email, the breach of contract exclusion was invoked only with respect to CertaPro's fourth through tenth causes of action related to the contract between CertaPro and Capurro, not to CertaPro's Infringement Claims. *Id.* at 5-6.

On February 11, 2011, Capurro's counsel responded to Tower, requesting reconsideration of its denial of a defense. Compl., Ex. D. On March 15, 2011, Tower responded through Nielsen, Haley & Abbot, which by that point Tower had retained to represent it with respect to Capurro's claim. Nielsen, Haley & Abbot continue to represent Tower in this action. The parties exchanged letters disputing coverage until Tower filed the instant action seeking a declaration that it owed no duty to defend. *See* Compl., Exs. F (Capurro's April 12, 2011 Letter), G (Tower's April 26, 2011 Letter), H (Capurro's July 1, 2011 Letter), I (Tower's July 25, 2011 Letter).

Tower argues that because it relied on the advice of counsel in denying Capurro's claim, it cannot be held liable for breach of the implied covenant of good faith and fair dealing as a matter of law. In order to establish a breach of the implied covenant claim under California law, a plaintiff must show (1) benefits due under the policy were withheld; and (2) the reason for withholding benefits was unreasonable *or* without proper cause. *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001). The Court has already held that whether the denial was reasonable is a question for the jury. *See* Dec. 15, 2011 Order at 11-12. Good faith reliance on counsel's advice can show "proper cause" for a denial of a claim, even where the denial turned out to be incorrect. *See State Farm Mut. Augo. Ins. Co. v.*

10

*Superior Court*, 228 Cal. App. 3d 721, 724-25 (1991); *Miranda v. California Capital Ins. Co.*, 2011 Cal. App. Unpub. LEXIS 2419 (First App. Div. Mar. 29, 2011) (where insurer wrongfully denied its defense duty, insurer did not act in bad faith because it relied on advice of counsel in good faith). Here, Tower argues that it had "proper cause" to deny its insured a defense because it relied on Nielsen's advice in good faith.

In *T.G.S. Transportation, Inc. v. Canal Ins. Co.*, 2004 U.S. Dist. LEXIS 31284, *18 (E.D. Cal. Jun. 4, 2008), *aff'd* 216 Fed. Appx. 708 (9th Cir. 2007), Judge Coyle described the elements an insurer must prove to successfully assert the advice of counsel defense:

> 1. That the insurer acted in good faith reliance upon advice of counsel in what it believed was a manner necessary to protect its interests;
>
> 2. That the insurer was not so knowledgeable as to the legal standard involved that it knew the advice of counsel was erroneous;
>
> 3. That the insurer made full disclosure of all relevant facts to counsel (or counsel acted on the basis of facts determined by his or her own investigation on behalf of the insurer); and
>
> 4. That the insurer was willing to reconsider, and act accordingly, when it determined that the lawyer's advice was incorrect.

*Id.* (*citing Dalrymple v. United Services Auto. Assn.*, 40 Cal. App. 4th 497, 513 (1995)).

Having reviewed the parties' arguments in light of these elements, the Court finds that summary judgment is not warranted here. Of particular concern to the Court is the fact that Tower did not follow the advice of counsel in pursuing its "breach of contract" theory. An advice of counsel defense requires that the insurer actually rely on the advice. *See id.* at *25. Tower initially did rely on Nielsen's advice that the Policy's infringement exclusion (Exclusion i) applied to CertaPro's Infringement Claims. Tower pursued that theory in its pre-litigation correspondence with Capurro, and continued litigating on that theory through summary judgment. *See* June 3, 2010 Letter; March 15, 2011 Letter; April 26, 2011 Letter; July 25, 2011 Letter; Compl. ¶¶ 8-10; Mot. for Summ. J. (Doc. 23); Reply Br. (Doc. 43). However, after the Court issued its December 15, 2011 Order denying Tower summary judgment on that issue, Tower presented a new theory: that the "breach of contract" exclusion applied to CertaPro's *infringement* claims. *See* Jan. 5, 2012 Letter Br. (Doc. 48). Nielsen originally informed Tower that "the policy exclusion for contractual liability may apply to many claims in the tendered suit, [but] it would

11

not apply to any infringement claims unless those claims would not have been viable but for the contract." Osterholt Decl., Ex. B. However, after Tower lost on summary judgment on the infringement exclusion theory, Tower changed tacks and argued that the breach of contract exclusion applied as long as the infringement claims bore only an "incidental relationship" to the alleged breach of contract. Tower's Cross-Mot. for Summ J., at 10 (Doc. 62).[3] Contrary to Nielsen's original advice, Tower pursued a greatly expanded interpretation of what constitutes "arising out of a breach of contract," used that interpretation to provoke a new round of summary judgment motions, and thereby increased the length and cost of this litigation to the detriment of its insured.[4] It is a question for the jury whether or not this constituted good faith reliance on the advice of counsel.

Tower argues that it consistently followed the advice of counsel because its "conclusion never changed . . . counsel has consistently opined and argued that Tower owed no duty to defend." Pl.'s Reply at 6. However, the advice of counsel defense will always be raised in the context of an insurer's denial of coverage. More is needed to show actual reliance on counsel's advice than simply the conclusion that an insured's claim should be denied.

The Court also notes that the plaintiff in an insurance bad faith case "has the right to conduct discovery to obtain facts and theories, including advice of counsel, on which the denial of liability is based. The defense of advice of counsel generally waives the attorney-client privilege as to

---

[3] The Court recognizes that Nielsen's firm is now Tower's counsel, and thus it is likely that Nielsen's firm itself chose to re-interpret the breach of contract exclusion. However, the Court has found no evidence that the advice of counsel defense is a moving target that continues to provide protection to an insurer's shifting reasons for denial simply because the insurer hired the outside counsel as trial counsel.

[4] As described above, the second round of summary judgment motions occurred after the Court requested that the parties brief the issue of whether it should enter summary judgment in favor of Capurro after having denied summary judgment to Tower. *See* Dec. 15, 2011 Order at 14. In Tower's letter brief in response, it raised the "breach of contract exclusion" theory for the first time and argued that it had not yet been "fully ventilated." Jan. 5, 2011 Letter (Doc. 48) at 3. The Court thereafter allowed the parties to file cross-motions for summary judgment on the issue.

It is worth noting that the Court's ruling on the second round of summary judgment motions closely resembles Nielsen's original advice. The Court found that the Infringement Claims did not "arise from the breach of contract" because "the alleged wrongs committed by Capurro constituted legally cognizable claims whether or not a contract ever existed. Capurro need not have entered into a contract with Certa Pro or ever been authorized to use their intellectual property in order to infringe that property. Indeed, none of Certa Pro's three Infringement Claims mention the Franchise Agreement." *See* Apr. 2, 2012 Order at 15-16. This is essentially what Nielsen meant when he told his client that the breach of contract exclusion only applied to claims that "would not have been viable but for the contract," i.e., that the existence of the contract rendered the defendant's actions wrongful.

12

communications and documents relating to the advice." *State Farm*, 228 Cal. App. 3d at 727. Capurro informs the Court that no discovery has yet occurred on the advice of counsel defense. Further discovery may be relevant to the question of good faith reliance as well as to any investigation pursued by counsel or Tower into the claim. Discovery questions will be made more difficult by the fact that the outside counsel in question is now Tower's trial counsel in this case. These issues also make summary judgment on this issue premature.

In sum, the Court finds that summary judgment is not warranted on the advice of counsel defense. It remains a question for the jury whether Tower breached the implied covenant of good faith and fair dealing.

**CONCLUSION**

Tower's motion for partial summary judgment on Capurro's counter-claim for breach of the implied covenant of good faith and fair dealing is DENIED.

**IT IS SO ORDERED.**

Dated: August 31, 2012

SUSAN ILLSTON
United States District Judge

13